Asociación Médica de Puerto Rico, Inc., demandante y apelante, *v.* Pío Rechani, demandado y apelado.

No. 4776.—*Sometido:* Diciembre 11, 1930. *Resuelto:* Marzo 31, 1931.

*Feliú & La Costa,* abogados de la apelante; *R. Martínez Nadal* y *Celestino Iriarte,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

La Asociación Médica de Puerto Rico, alegando ser una corporación constituída de acuerdo con la ley, presentó ante la Corte de Distrito de San Juan, una demanda de *injunction* para que se prohibiera a Pío Rechani que ejerciera como médico. Aparte de la alegación a que nos referimos, en la demanda aparecen las de que el demandado sin poseer licencia expedida por la Junta Insular de médicos examinadores, y sin estar autorizado por las leyes de Puerto Rico, viene dedicándose al ejercicio de la Medicina, diagnosticando enfermedades, expidiendo recetas para las personas, desempeñando el cargo de médico municipal en violación de la Ley No. 73 de 1923 y de la número 15 de 1924, y sin que el demandado tenga el título académico de escuela alguna de medicina reconocida por la Junta de Médicos examinadores, o licencia otorgada por esta junta; que el consumo o ingestión de medicina y drogas recetadas por el demandado a los pacientes, y su asistencia constituye un peligro público; que el demandado cobra a sus pacientes compensación por sus servicios; que esa conducta ocasiona a los asociados de la demandante el perjuicio de verse privados de la compensación que recibirían de los mismos enfermos, pérdida que no puede fijarse en cantidad alguna; y que el demandado es insolvente, y los perjudicados no podrían hacer efectiva una condena de daños y perjuicios.

El demandado contestó, negando que ejerza la medicina sin derecho a ello, y alegando también que por las disposiciones de la Ley No. 79 de 1911, viene ejerciendo la medicina, y desempeñando cargos, formulando recetas para tratamiento y curación de enfermedades, sin usurpar funciones de los médicos autorizados de Puerto Rico, y sin que perciba de

sus pacientes compensación de manera fraudulenta, sino la adecuada por los servicios que les presta; negó que su actuación constituya peligro o amenaza para la salud y la seguridad del pueblo, o cause perjuicio a la demandante o sus asociados.

Y en la comparecencia, presentó el demandado una moción *to quash,* que según resulta de la opinión de la corte, se convino por las partes en que se tomaría como una excepción previa. En esa moción el demandado pidió que se desestimara la demanda: (*a*) porque los hechos en ella alegados no son suficientes para justificar la expedición del auto de *injunction;* (*b*) porque la demandante no tiene capacidad para pedir tal auto; y (*c*) porque la demandante tiene remedio adecuado en ley.

La corte declaró sin lugar la petición de *injunction,* fundándose en una opinión en la que estudia especialmente su jurisdicción como corte de equidad, la procedencia del *injunction,* la capacidad de la demandante, la existencia de remedio en ley, y la del daño específico a la demandante; y ésta ha apelado ante nosotros, presentando a nuestra consideración sinco señalamientos de error.

■ La parte apelante sostiene que la corte erró al declarar que no tiene jurisdicción en este asunto, por la naturaleza del mismo.

La corte de distrito, en la opinión base de su sentencia, estima que la ley en que la demandante funda su petición, es la No. 73 de 1923, y su enmienda por la No. 15, de 1 de julio de 1924, según las que el ejercicio ilegal de la medicina y la cirugía, es un delito menos grave; y en cuya legislación se dispone que el tribunal de médicos examinadores puede investigar la identidad de cualquier persona que se haga pasar por médico, y en su caso anular la licencia, y dar cuenta al Procurador General para la persecución del infractor por los tribunales. La corte entiende que la ley en ese aspecto, es una ley penal, y dice en su opinión:

"... Una corte de equidad no tiene jurisdicción para impedir la comisión de delitos, ni intervenir en la prevención de actos ilícitos, sólo porque sean ilegales, y la razón para esto es, no solamente la falta de jurisdicción, sino también la existencia de un remedio adecuado en ley, en otras palabras, las cortes de equidad no deben intervenir en la administración de un estatuto criminal.''

En apoyo de esta tesis cita Spelling, la obra de Wharton sobre ley penal, y alguna de Corpus Juris.

En oposición a esta manera de ver de la corte la apelante cita la doctrina del caso *In re Debbs,* 158 U. S. 564, en donde se dijo:

"Por otro lado, se objeta el que está fuera de la jurisdicción de una corte de equidad el inhibir la comisión de delitos. Esto, como proposición general, es incuestionable. Algo más que la amenazada comisión de una ofensa contra las leyes del país, es necesario para invocar el ejercicio de los poderes inhibitorios de la corte. Debe haber algunas interferencias, reales o amenazadas, contra bienes o derechos de naturaleza pecuniaria; mas, cuando aparecen tales interferencias, surge la jurisdicción de una corte de equidad, y no se destruye por el hecho de que estén acompañadas (las interferencias) de o que constituyan ellas de por sí, violaciones de la ley general.''

Los hechos esenciales en este caso *In re Debbs,* se diferencian bastante de los del caso en que resolvemos. En el de Debbs aparece que había veinte y dos compañías de ferrocarril que hacían el tráfico y trasporte entre Estados, llevando a éstos mercancías diversas y en grandes cantidades, y que llevaban también correspondencia postal, y habían hecho trasporte de tropas, municiones y provisiones; que los demandados, eran oficiales de la American Railway Union; que hubo choque entre la compañía de vagones Pullman y sus empleados, que se retiraron del servicio de la compañía; y la citada Union estableció el *boycott* contra la compañía; se alegó que los demandados por sí y sus agentes detenían el tráfico ferroviario, sustrayéndoles trabajadores, inutilizando material y empleando violencia, etc. La petición de *injunction* fué presentada y sostenida por el fiscal de distrito del distrito norte de Illinois bajo la dirección del Attorney

General. Se libró la orden de *injunction,* y se notificó a varios de los interesados. Como algunos la desobedecieron se presentó el cargo contra ellos por desacato; y por virtud de tal cargo fueron condenados a cumplir términos de cárcel, que variaban de tres a seis meses. Acudieron los acusados, en error y en hábeas corpus. Y en este último procedimiento aparece la opinión que se ha citado. Naturalmente, no siendo los hechos del caso los mismos, es difícil aplicar al presente, de una manera estricta, lo que allí se determinó, salvo algunos conceptos generales.

En aquel caso había el perjuicio general, ocasionado por los actos de los demandados, que obstruían y obstaculizaban el comercio entre Estados, que impedían el trasporte de artículos de primera necesidad, y que se manifestaban en violencias de obra. En el caso presente, los hechos no tienen gran analogía con los de *In re Debbs.* En este último dijo la Corte Suprema:

"El caso que la demanda presenta es el siguiente: Los Estados Unidos, hallando que la transportación interestadual de personas y propiedad, así como la conducción del correo, está violentamente obstruída, y que existe una combinación y conspiración con el fin de someter el dominio de dicha transportación a la voluntad de los conspiradores, acudió ante uno de sus tribunales, actuando como corte de equidad, en solicitud de un *injunction* para impedir tal obstrucción y prevenir que la conspiración se llevara a efecto. Se presentan dos cuestiones de importancia: Primero. ¿Son las relaciones entre el gobierno general y el comercio interestadual y la transportación del correo de tal naturaleza que autoricen una intervención directa para prevenir la obstrucción forzada de los mismos? Segundo. Si existe, como toda autoridad en los asuntos gubernamentales implica tanto poder como deber, ¿tiene una corte de equidad jurisdicción para expedir un *injunction* a fin de contribuir al cumplimiento de tal obligación?"

Y después, en la página 583, tomo citado, aparece lo que sigue:

"De tal suerte, en el caso que nos ocupa, el derecho al uso de violencia no excluye el de recurrir a las cortes en demanda de una re-

solución judicial y del ejercicio de todas sus facultades de preven-·ción. En realidad, es un elogio, más que una inculpación, al go-bierno, que en lugar de dirimir por sí mismo entre el bien y el mal por parte de estos peticionarios y sus asociados, y de obligar el cum-plimiento de tal resolución con la macana del policía y la bayoneta del soldado, sometió todas dichas cuestiones a la determinación pací-fica de tribunales judiciales, e invocó su consideración y juicio res-pecto a la medida de sus derechos y facultades y las obligaciones co-rrelativas de aquéllos contra quienes se presentaba la demanda. E igualmente hay que acreditar a estos últimos que la sentencia de di-chos tribunales fuera por la gran mayoría de ellos respetada, y que se terminaran las controversias que amenazaban tantos desastres.''

En la misma opinión se cita el caso *United States* v. *Bell Telephone Company* en donde se había sostenido por una parte que los Estados Unidos no tenían interés pecuniario en el objeto del pleito, pero esa proposición fué desestimada, sosteniéndose, de acuerdo con la doctrina del caso *United States* v. *San Jacinto Tin Co.,* 125 U. S. 273, que era evidente que en el ánimo de la corte en el caso ante ella, el derecho de propiedad sobre el terreno en controversia, era una materia de importancia, pero cuidadosamente estableció que los casos en que la intervención de la corte no podía ser usada son aquéllos en que los Estados Unidos no tienen interés pecuniario en el remedio a que se aspira.

Como se nos ha citado algún párrafo de esta opinión, es de conveniencia fijar la atención en el mismo, para no darle otro alcance que el que por sí tiene. Dijo la Corte Suprema:

''Por otra parte, se aduce que está fuera de la jurisdicción de una corte de equidad el evitar la comisión de delitos. Esto, como propo-sición general, no se discute. Un juez de equidad no tiene jurisdic-ción criminal. Para poner en curso los poderes de la corte para ex-pedir autos de *injunction* se requiere algo más que el amenazarse co-meter un delito contra las leyes del país. Debe haber algunas inter-venciones reales o amenazadas en la propiedad o derechos de natu-raleza pecuniaria, pero cuando aparezcan tales intervenciones, surge la jurisdicción de una corte de equidad, y no la destruye el hecho de que estén asociados o sean por sí mismas violaciones de la ley pe-nal. De este modo, en *Cranford* v. *Tyrrell,* 128 N. Y. 341, se sos-

tuvo un *injunction* para impedir al demandado que mantuviera una casa de citas deshonestas, expresándose así la corte en la página 344: 'Que el que ocasione el estorbo esté sujeto a las disposiciones y penalidades de la ley criminal no es defensa a una acción sobre resarcimiento de daños sufridos, establecida en su contra por una persona privada, ni a un *injunction* por el uso continuo de sus propiedades de tal manera.' Y en *Mobile* v. *Louisville & Nashville Railroad,* 84 Alabama, 115, 126, hay una manifestación similar en estas palabras: 'El mero hecho de que un acto sea criminal no despoja de jurisdicción a una corte de equidad para prevenirlo mediante *injunction,* si ello es a la vez una violación de derechos de propiedad y la parte perjudicada no tiene otro remedio adecuado para impedir los daños irreparables que resultarían de la omisión o inhabilidad de un tribunal de derecho para garantizar tales derechos'.''

Como vemos la proposición general de que las cortes de equidad no tienen en su jurisdicción la facultad de represión o de prevención de delitos, se considera indudable. Un juez de equidad no tiene jurisdicción penal. Para que actúe, es necesario ''algo más que la amenaza de comisión de una violación de las leyes del país.'' Y un algo más es el ataque a la propiedad o intereses pecuniarios; y entonces actúa la equidad, aunque el hecho de que se trata sea de naturaleza delictiva. La cita que se hace del caso *Mobile* v. *Louisville & Nashville Railroad,* es importantísima; de ella aparece la necesidad de que la parte no tenga otro remedio adecuado para la prevención del daño irreparable.

■■■ La legislación de Puerto Rico en la materia, se halla esencialmente compuesta por las leyes No. 79 de 1911, No. 73 de 1923, y No. 15 de 1924. No se cita la original de 1903, porque para este caso no es de necesidad.

En la ley No. 79 de 1911, se enmienda una sección o artículo de la de 1903, y se fija la forma en que las personas que deseen ejercer la Medicina han de obtener su licencia. Un ''Disponiéndose'' de la sección enmendada, establece que aquéllos que han estado practicando en Puerto Rico la profesión médica por un período de cinco años antes de la

aprobación de la ley tendrán derecho a continuar en el ejercicio de la profesión sin sujetarse a lo prescrito en esa ley.

La Ley No. 73 de 1923, estableció una junta de médicos examinadores, y fijó sus atribuciones y deberes. De acuerdo con sus disposiciones, es preciso, para ejercer la profesión médica en Puerto Rico, a más del título, edad y conducta, la licencia expedida por la junta, previo examen de reválida; estableciéndose por la ley algunas exenciones de tal examen.

La Ley No. 15, de 1 de julio de 1924 (p. 123), enmendó varios artículos de la que acabamos de citar, entre ellos el 25, que en su última redacción es como sigue:

"Sección 25. El Tribunal Médico Examinador, por su propia iniciativa, o a virtud de queja o denuncia, debidamente fundada, de un ciudadano, podrá en cualquier momento investigar la identidad de cualquier persona que pretenda ser, o se anunciare o haga pasar como médico-cirujano, osteópata, practicante, optómetra, comadrona, enfermera, o enfermero licenciado o no por la Junta y después de notificar por escrito al interesado, tendrá poder para exigirle que presente pruebas razonables y a satisfacción del tribunal de que posee una licencia legalmente obtenida para practicar su profesión en la Isla de Puerto Rico y de que es en realidad la persona a quien originalmente se expidió dicha licencia. Si de la investigación resultare que el denunciado no tiene licencia para practicar, o no le pertenece legítimamente la que posee, la junta anulará dicha licencia y, además, en cualquiera de los dos casos traspasará el expediente al Attorney General de Puerto Rico para la debida persecución de los infractores ante los tribunales del país; *Disponiéndose*, que el Tribunal Médico de Exámenes, tendrá poder para retirar y anular, temporal o definitivamente, la licencia que poseyera cualquier médico-cirujano, osteópata, practicante, optómetra, comadrona, enfermera o enfermero, por convicción en cualquiera de los siguientes casos: delito de fraude o engaño cometido durante el ejercicio de la profesión; por delito de crimen (*felony*); por ser un alcohólico consuetudinario o adicto al uso de drogas narcóticas; por practicar o ayudar a efectuar, de cualquier manera, método o forma, un aborto criminal en una mujer; por excederse repetidas veces en las atribuciones profesionales que le señala esta Ley; por conducta de mal práctica, es decir, incompetencia burda y manifiesta, con perjuicio de tercero, en el ejercicio de su profesión; por conducta inmoral y deshonrosa; *Disponiéndose, asimismo,* que el procedimiento a seguir para la anulación o suspensión

temporal de una licencia será incoado por uno de los miembros del tribunal designado por el Presidente, a virtud de querella presentada por cualquiera de los miembros del tribunal o declaración jurada presentada por cualquier ciudadano. La querella o declaración deberá en todo caso aducir hechos que *prima facie* constituyan causa probable. El querellado tendrá para su defensa ante el Tribunal Médico Examinador todos los derechos concedidos a personas acusadas de delito, o con excepción del juicio o investigación por jurado; *Disponiéndose, igualmente,* que en todos los casos de anulación o suspensión de licencias el fallo del Tribunal Médico de Exámenes será comunicado a las autoridades fiscales y policíacas de la Isla para que vigilen su debido cumplimiento; pero que en los casos a los que se refiere el disponiéndose inmediato anterior, juzgados por el tribunal y en el que el fallo fuere de anulación o suspensión de licencia por más de un año, dicho fallo no será firme ni comunicado a las autoridades fiscales y policíacas, mientras una corte de distrito no haya revisado y juzgado el caso, para ante cuya corte tendrá derecho de apelación, en juicio de revisión, el profesional sentenciado por el Tribunal Médico, cuyo derecho deberá ejercitar dentro de un plazo de diez días.''

Este precepto legal marca de una manera indudable el procedimiento. El Tribunal Médico Examinador tiene el poder necesario para exigir pruebas de la posesión de una licencia legal para la práctica de la profesión; y el resultado de la investigación lleva el expediente a poder del Procurador General para la persecución del infractor ante los tribunales del país. De uno de los *"Disponiéndose"* aparece claramente que esa persecución por el Procurador General no ha de ser solamente en la vía penal, ya que se habla de fallo del tribunal de anulación o suspensión de licencia.

Puede entonces dejarse de lado la cuestión de si un tribunal de equidad tendría o no jurisdicción en *injunction,* en un caso como el presente, ya que tenemos en la misma ley, la solución del problema en cuanto a la capacidad de la aquí demandante para la promoción y prosecución de un procedimiento para impedir que el demandado ejerza la profesión de médico. A nuestro entender la Junta de Médicos Examinadores, es la capacitada, por ley, para establecer el pro-

cedimiento, y para enviar el expediente al Procurador General, para su actuación ante los tribunales. Y siendo ello así, la resolución de que se apela se halla justificada.

No entendemos que en la resolución apelada se hayan cometido los errores que la apelante señala.

La demandante carece de personalidad para este litigio. Además, existe un remedio claro, adecuado, y suficiente en ley; y no resulta de la demanda el daño irreparable a la demandante.

*Debe confirmarse la sentencia apelada.*